[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11730

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KELVONTAE BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00196-CG-MU-1

_____

Before BRANCH, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant Kelvontae Brown appeals his conviction for possession of a firearm by a convicted felon, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied to his case considering *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024). He argues that the statute proscribes conduct protected by the Second Amendment and is inconsistent with this nation's tradition of firearms regulations. Under both *Bruen* and *Rahimi*, § 922(g) is constitutional both facially and as applied to Brown. As a result, we affirm.

## I.

On March 27, 2023, Mobile Police responded to several 9-1-1 calls stating that there was a Black male with a handgun—later identified as Brown—running around at an intersection. Officers observed the individual as described, and saw a black object tucked into the front of his pants. An officer observed Brown bend down near some branches and dirt and appear to put something into the pile. The officer pulled up next to Brown. When asked, Brown admitted to placing the gun down in the dirt. Brown informed the officer that he was being chased, and people were shooting at him.

The investigation revealed that there was no sign that there was anyone else shooting or chasing Brown. Brown volunteered to an officer that he was going to jail because he was a felon and not

supposed to be around guns. Officers recovered the firearm. Brown was previously convicted of felony offenses, including domestic violence by strangulation or suffocation, and theft of property in the first degree. In October 2023, a federal grand jury indicted Brown with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Brown moved to dismiss the indictment, arguing that the Supreme Court's recent decision in *Bruen* rendered § 922(g)(1) unconstitutional on its face and as applied to him. The district court denied Brown's motion to dismiss, ruling that our precedent in *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), foreclosed Brown's challenge. After the court's denial of his motion to dismiss, Brown pleaded guilty. The district court sentenced Brown to 30 months' imprisonment, followed by 3 years' supervised release. Brown timely appealed.

## II.

Section 922(g)(1) makes it a crime for any person convicted of a felony to possess firearms or ammunition. 18 U.S.C. § 922(g)(1). Brown argues on appeal that his § 922(g)(1) conviction is unconstitutional in violation of the Second Amendment, given the Supreme Court's decisions in *Bruen* and *Rahimi*. We generally review the constitutionality of a statute de novo. *United States v. Gruezo*, 66 F.4th 1284, 1292 (11th Cir. 2023) (per curiam).

## III.

In *District of Columbia v. Heller*, the Supreme Court first recognized that the Second Amendment protects an individual's right

to possess and carry weapons for lawful self-defense, unconnected with militia service. 554 U.S. 570, 635 (2008). The Court then concluded that "on the basis of both text and history," D.C.'s law prohibiting the possession of handguns in homes violated the Second Amendment. *Id.* at 595. But the *Heller* Court also acknowledged that the Second Amendment right to keep and bear arms was "not unlimited," emphasizing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. The Supreme Court labeled these restrictions as "presumptively lawful." *Id.* at 627 n.26. It specifically ruled that Heller only had a right to register his handgun and carry it in his home if he was "not disqualified from the exercise of Second Amendment rights." *Id.* at 635.

After *Heller*, we considered and rejected a constitutional challenge to § 922(g)(1)'s prohibition on felons possessing firearms. *See Rozier*, 598 F.3d at 770–71. We explained, "the first question to be asked" under *Heller* "is whether one is *qualified* to possess a firearm." *Id.* at 770. When making this determination, a convicted felon's Second Amendment right to bear arms "is not weighed in the same manner as that of a law-abiding citizen." *Id.* at 771. Instead, *Heller* recognized that prohibiting felons from possessing firearms was a "presumptively lawful longstanding prohibition." *Id.* (quotation marks omitted). And this language from *Heller* "suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* We concluded that § 922(g)(1) was a "constitutional

avenue to restrict the Second Amendment right of certain classes of people," including those with felony convictions. *Id.*

We rejected Rozier's argument that the statement from *Heller* about "longstanding prohibitions on the possession of firearms by felons" was "merely dicta" for two reasons. *Id.* at 771 n.6. First, to the extent that the statement "limit[ed] the Court's opinion to possession of firearms by *law-abiding* and *qualified* individuals," it was necessary to the decision reached. *Id.* Second, even if the statement was superfluous to *Heller*'s holding, we would still afford it "considerable weight," as dicta from the Supreme Court is not to be lightly ignored. *Id.* Because Rozier, as a convicted felon, fell within a class of people who could be excluded from firearm possession, Rozier's purpose for possessing a handgun and the fact that he only used the gun in his home for purposes of self-defense were "irrelevant." *Id.* at 770.

Several years later, the Supreme Court in *Bruen* introduced a new framework to correctly apply "*Heller*'s text-and-history standard." 597 U.S. at 39. At the first step, the court must decide whether the challenged law burdens conduct protected by the plain text of the Second Amendment. *Id.* at 17, 32. If the law burdens protected conduct, the government must demonstrate the restriction burdens the Second Amendment right in a way that is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17.

Applying its historical test, the Court invalidated New York's licensing law, which required applicants to demonstrate a

"special need for self-defense" before obtaining a permit to carry firearms in public. *Id.* at 38. *Bruen* relied on two main principles. First, a total or near-total ban on carrying weapons outside the home would infringe the Second Amendment right. *Id.* Second, the state failed to identify a "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 38–39.

Applying *Bruen*, we rejected a defendant's Second Amendment challenge to § 922(g)(1) in *United States v. Dubois*, 94 F.4th 1284, 1291–93 (11th Cir. 2024), *vacated*, 145 S. Ct. 1041 (2025), *reinstated by* -- F.4th --, 2025 WL 1553843 (11th Cir. June 2, 2025). We found the challenge was foreclosed by *Rozier*, which "interpreted *Heller* as limiting the [Second Amendment] right to 'law-abiding and qualified individuals' and as clearly excluding felons from those categories by referring to felon-in-possession bans as presumptively lawful." *Id.* at 1293 (quoting *Rozier*, 598 F.3d at 771 & n.6). We also rejected the defendant's argument that *Bruen* abrogated *Rozier*, observing that "*Bruen*, like *Heller*, repeatedly described the right as extending only to 'law-abiding, responsible citizens.'" *Id.* (quoting *Bruen*, 597 U.S. at 26). Because *Rozier* stood as binding, it foreclosed the defendant's Second Amendment challenge to § 922(g)(1). *Id.*

Then, in *Rahimi*, the Supreme Court rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(8), which prohibits individuals subject to a domestic violence restraining order from possessing a firearm. 602 U.S. at 684–85, 693. The Court again declared

that prohibitions on "the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* at 699 (quoting *Heller*, 554 U.S. at 626–27 & n.26).

The Court observed that in *Heller* and *Bruen*, it "used the term 'responsible' to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right." *Id.* at 701–02. Even in holding that the statute was not unconstitutional as applied, the Court rejected the government's argument that a person could be disarmed "simply because he is not 'responsible.'" *Id.* at 701. It reasoned that the term was too vague to impose a meaningful limitation. *Id.* But, unlike individuals merely deemed irresponsible, "[a]n individual found *by a court* to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702 (emphasis added).

In January 2025, the Supreme Court vacated our decision in *Dubois* and remanded the case for further consideration after *Rahimi*. *See Dubois*, 145 S. Ct. at 1041. We reinstated our previous opinion in June 2025, concluding "that *Rahimi*—like [*Bruen*]—did not abrogate our holding in *Rozier* that section 922(g)(1) is constitutional under the Second Amendment." *Dubois*, 2025 WL 1553843, at *1. We reasoned that "[t]he only time that the *Rahimi* majority mentioned felons was to reiterate *Heller*'s conclusion that prohibitions on the possession of firearms by felons and the mentally ill are presumptively lawful." *Id.* at *5 (internal quotation marks omitted and alterations adopted). We stated in explicit terms that "*Rahimi* reinforced—not undermined—*Rozier*." *Id.*

Because *Rozier* remains binding precedent, it continues to foreclose Brown's Second Amendment challenge to his conviction under § 922(g)(1). Therefore, we affirm.

**AFFIRMED.**